UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                v.                                1:06-CR-346
                                                                   (FJS)

ANTHONY BILLUPS,

                                **Defendant.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY**<br>James T. Foley U.S. Courthouse<br>445 Broadway, Room 218<br>Albany, New York 12207-2924<br>Attorneys for the United States | **ROBERT A. SHARPE, AUSA** |
| **OFFICE OF THE FEDERAL PUBLIC DEFENDER**<br>39 North Pearl Street, 5th Floor<br>Albany, New York 12207<br>Attorneys for Defendant | **GENE V. PRIMOMO, AFPD** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court is Defendant's motion to suppress a firearm seized as a result of a K-9 search on July 23, 2006, on the ground that the police initiated their search and seizure of him without a reasonable suspicion that he had or was about to commit a crime and that, therefore, the handgun that the police recovered during that search was seized in violation of Defendant's Fourth Amendment rights. *See* Defendant's Memorandum of Law, dated October 24, 2006, at [unnumbered] 2. Although the Government opposed this motion, it agreed with

Defendant that a suppression hearing was required to resolve the factual issues.  Therefore, the Court conducted a suppression hearing on January 18, 2007.  At the conclusion of the hearing, the Court provided the parties with an opportunity to submit further briefing and reserved decision until it had an opportunity to review all of the evidence and the parties' submissions.  The Court has completed its review, and the following constitutes the Court's written disposition of Defendant's motion.

## II. DISCUSSION

### A.  The testimony at the suppression hearing

At the suppression hearing, Albany Police Officers William Bonanni, Joshua Laiacona, and Kyle McCraith, Albany Police Sargent Michael Barone, and Albany Police Detective Dean Halpin testified about the incidents leading up to Defendant's arrest and the seizure of the handgun.  According to their testimony, an unidentified person called 9-1-1 to report that, at the corner of Lark and Orange Streets in Albany, New York, there was a black male with a gun and that he was wearing something red.  Officer Laiacona, who was in uniform and in a marked patrol vehicle, was patrolling the area of Second Street and Judson Avenue, which is a very short distance from that location.  Officers Bonanni and O'Brien, who at the time were at the police station, left in the same patrol car when the 9-1-1 report was received.

Officer Laiacona drove from Judson Avenue to Lexington and proceeded in the wrong direction down Orange Street toward the location identified in the 9-1-1 report.  He saw a black male, later identified as Defendant Billups, on the north side of Orange Street wearing a striped

shirt over what appeared to be a red shirt.[1]  Defendant was the only person whom Officer Laiacona saw on the street.  Officer Laiacona pulled his car over, got out, and began to approach Defendant.  At about the same time, Officers Bonanni and O'Brien drove down Orange Street, saw Officer Laiacona get out of his vehicle, and saw Defendant.

As he approached Defendant, Officer Laiacona told him that he wanted to speak to him and told him to stop.  Defendant turned to face Officer Laiacona, placed his hand on his waistband and began to back away from him slowly.  Then, within a matter of seconds, Defendant turned and fled.

Officer Laiacona began to chase Defendant.  Officer Bonanni joined in the pursuit.  Defendant continued to disregard the officers' repeated instructions to stop.  As Officers Laiacona and Bonanni continued to chase Defendant, Officer O'Brien exited the passenger side of the police vehicle in which he was sitting, got in the driver's side, and drove around the block in an attempt to head off Defendant.

Officer Laiacona radioed in that he was pursuing Defendant heading eastbound on Orange Street.  He identified Defendant as a black male in his mid-20s, wearing a striped shirt, and stated that he believed that Defendant was armed because Defendant continued to keep his hand on his waistband as he ran.

Officer Laiacona drew his gun during his pursuit of Defendant and at one point dropped his gun.  Officer Bonanni, who at the time was behind Officer Laiacona, told Officer Laiacona to pick up his gun and then ran ahead of him.  After retrieving his gun, Officer Laiacona continued

---

[1] Since the parties do not dispute that this individual was Defendant Billups, the Court will refer to him as Defendant.

to chase Defendant. The chase lasted between one and two minutes. At one point, Defendant went around the corner of a house and, as Officer Bonanni followed him around the corner, he saw Defendant stop and turn back toward him pulling a gun from his waistband. Officer Laiacona also rounded the corner and saw Defendant with the gun. Both officers jumped back around the corner away from Defendant. Officer Bonanni drew his weapon and then both officers, with their weapons drawn, came back around the corner where Defendant had been. By this time, Defendant was in an area overgrown with weeds and brush. Officers Bonanni and Laiacona tackled Defendant in the weeds. Both officers believed that Defendant still had the gun in his possession. Although they ordered him to show them his hands, he did not do so. At this point, they placed Defendant under arrest and handcuffed him; they did not find the gun on Defendant.

Officer O'Brien and Sargent Barone arrived as Officers Bonanni and Laiacona were arresting Defendant. The arresting officers told Officer O'Brien and Sargent Barone that Defendant had had a gun but that they could not find it. After they searched the weeds and still could not find the gun, they summoned a police K-9 unit to conduct a further search. Within fifteen minutes of beginning his search, the K-9 found the gun under a plastic garbage bag, located approximately five feet from where Officers Bonanni and Laiacona had tackled Defendant.

**B.   The Fourth Amendment**

The gravamen of Defendant's argument is that the Court should suppress the handgun that the officers recovered because they recovered it as a result of their illegal seizure of him. In light

of the Supreme Court's decision in *California v. Hodari D.*, 499 U.S. 621 (1991), and the Second Circuit's decision in *United States v. Swindle*, 407 F.3d 562 (2d Cir. 2005), in which the court applied *Hodari D.*, Defendant's argument is without merit.

In *Hodari D.*, the Supreme Court explained that "[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful . . . It does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee.  That is no seizure." *Hodari D.*, 499 U.S. at 626 (footnote omitted).  Therefore, the Court held that, "since [Mr.] Hodari did not comply with [the officer's] injunction [to stop,] he was not seized until he was tackled.  The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied." *Id.* at 629.

Although doing so reluctantly, the Second Circuit in *Swindle* applied the Supreme Court's holding in *Hodari D.* to uphold a conviction in a case in which the trial court had denied the defendant's motion to suppress the drugs that he threw out of his car window before the officers apprehended him.  Applying *Hodari D.* to determine when Mr. Swindle was seized for purposes of the Fourth Amendment, the Second Circuit noted that "[s]even years after *Hodari D.* was decided, the Court followed th[e] rule that an order to stop must be obeyed or enforced physically to constitute a seizure." *Swindle*, 407 F.3d at 572.  The court explained that "[i]n *County of Sacramento v. Lewis*, the Court observed that 'a police pursuit in attempting to seize a person does not amount to a "seizure" within the meaning of the Fourth Amendment.' 523 U.S. at 844, 118 S. Ct. 1708.  Put simply, '[a]ttempted seizures of a person are beyond the scope of the Fourth Amendment.' *Id.* at 845 n.7, 118 S. Ct. 1708." *Id.*  Therefore, although it did not agree with the

Supreme Court's reasoning or the results in *Hodari D.*, the court concluded that,

> [r]egardless of how unreasonable it was for the officers to *order* [Swindle] to pull over, and regardless of how reasonable it was for Swindle to have felt restrained in the face of the flashing police strobe light, there was no immediate "physical force" applied or "submission to the assertion of authority[,]" . . . [and] [t]herefore, no seizure immediately occurred. The drugs that Swindle abandoned before being apprehended were thus not the product of a Fourth Amendment seizure.

*Id.* at 572-73 (internal quotation omitted).

Applying *Hodari D.* and *Swindle* to the facts of this case leads to the inescapable conclusion that Defendant was not seized for purposes of the Fourth Amendment until the police officers tackled him. Thus, the firearm, which Defendant abandoned before the officers tackled him, is not a product of a Fourth Amendment seizure. Accordingly, the Court denies Defendant's motion to suppress the gun which the K-9 search uncovered beneath a plastic garbage bag.[2]

### III. CONCLUSION

After carefully considering the evidence adduced at the suppression hearing, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion to suppress the firearm, which the officers recovered as a result of a K-9 search of the area near the site where they seized him, is **DENIED**; and the

---

[2] The Court notes, however, that, based upon the facts adduced at the suppression hearing, in particular the fact that the firearm was not swabbed for prints and, therefore, there is no evidence that Defendant ever handled the firearm, and the fact that none of the witnesses were able to explain how the firearm, which Defendant allegedly tossed as he was running, ended up **beneath** a garbage bag, the Court has some reservations about whether the Government will be able to prove, beyond a reasonable doubt, that this gun was in Defendant's possession at the time of the incidents in question.

Court further

     **ORDERS** that the Government shall initiate a telephone conference with the Court and opposing counsel, using a professional teleconferencing service, at **9:30 a.m.** on **Tuesday, March 6, 2007**, for the purpose of scheduling the trial of this matter.

**IT IS SO ORDERED.**

Dated: February 26, 2007
       Syracuse, New York

                                                             Frederick J. Scullin, Jr.
                                                             Senior United States District Court Judge